IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICK MACKIE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-2328-N-BK |
| | § | |
| KAREN G. MILLS, Administrator of the | § | |
| Small Business Administration, *et al.*, | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Judge's *Order of Reference* [Doc. 30], the undersigned now considers Defendant Karen G. Mills' *Motion to Dismiss Mackie's Complaint for Lack of Jurisdiction, or, Alternatively, for Failure to State a Claim* [Doc. 14]. For the reasons that follow, it is recommended that the motion be **DENIED**.

### I.   BACKGROUND[1]

This declaratory judgment action arises from a collections effort by the Small Business Administration ("SBA") on a defaulted loan. Plaintiff Nick Mackie, in his role as 50% owner of Lonestrella LLC and 40% limited partner in Murillo Modular Group Ltd. ("MMG"), was a personal guarantor of an SBA loan to Lonestrella LLC for $650,000 (the "SBA Loan"). [Doc. 1 at 4-5]. Lonestrella used the SBA Loan to purchase real property, which it leased as office space to MMG. [Doc. 1 at 4-5; Doc. 21 at 2].

MMG's purpose was to develop and construct modular buildings, and in the course of its business, MMG routinely obtained performance bonds from the Fidelity & Deposit Company of Maryland ("F&D"). [Doc. 1 at 4–5]. As a condition of the bonds, Mackie, Lonestrella, and

---

[1] Because the Court is obligated to view the facts in the light most favorable to the non-movant, this recitation of the facts is taken from Plaintiff's complaint and assumed true.

others agreed to indemnify F&D for any claims made by MMG's subcontractors and vendors. [Doc. 1 at 5].

MMG's business declined, leaving it unable to continue making lease payments to Lonestrella, which, in turn, caused Lonestrella to default on the SBA Loan. [Doc. 1 at 5]. MMG also was unable to pay its subcontractors and vendors, some of whom made claims against the performance bonds and received payment from F&D. [Doc. 1 at 5–6]. As a result, on March 23, 2010, F&D made demand on MMG, Mackie, and others pursuant to the indemnity agreement. [Doc. 1 at 5–6]. Subsequently, on October 6, 2010, the SBA notified Mackie of its intent to accelerate the note on the SBA Loan, and demanded full payment of the outstanding balance of $604,766.89. [Doc. 1 at 6].

On February 25, 2011, after the indemnity agreement went unsatisfied, F&D filed suit against MMG, Lonestrella, Mackie and others in this Court. [Doc. 1 at 5–6]; *see Fidelity & Deposit Company of Maryland. v. Murillo Modular Group, Ltd, et al*., No. 3:11-CV-0382-M ("F&D lawsuit"). On March 4, 2011, F&D was granted a temporary restraining order enjoining the defendants, including Mackie, from spending or otherwise using any funds, except for such payments that were "ordinary, typical and necessary for their regular living expenses or the servicing of any of their secured debts." [Dkt. 11 at 5]. The TRO was later converted into a preliminary injunction on March 23, 2011. [Dkt. 40].

Two days earlier, on March 21, 2011, the SBA again notified Mackie of the SBA Loan's outstanding balance, which by then had grown to $639,303.66. [Doc. 1 at 7]. The written notice also stated that the debt, if still unpaid, would be referred to the Department of the Treasury ("Treasury") within 60 days of the notice, and that "Treasury may add interest and also substantial collection fees (up to 30% or more) to [the] unpaid debt as provided by law." [Doc. 1

at 7; Doc. 1-3]. Mackie's counsel responded to the SBA via email on April 18, 2011, advising of the preliminary injunction in the F&D lawsuit and requesting that the SBA suspend its collection efforts, including the referral of the loan to Treasury, until after arbitration in the F&D lawsuit was completed and the injunction was lifted. [Doc. 1 at 7; Doc. 1-4]. However, in May 2011, Mackie was contacted by Treasury, in an attempt to collect on the SBA Loan. As before, Mackie responded through his attorney, on August 4, 2011, informing Treasury of his April correspondence with the SBA, and the preliminary injunction in the F&D lawsuit which "barred" him from "utilizing his assets" to pay the SBA Loan. [Doc. 1 at 8; Doc. 1-5]. In September 2011, Defendant Diversified Collection Services ("Diversified") contacted Mackie on behalf of Treasury to collect on the Loan, explaining that the amount owed was $639,303.66 in principal/interest and $179,005.02 in penalty fees. [Doc. 1 at 8; Doc. 1-6 at 2-5]. Mackie was also contacted regarding the outstanding balance in April 2012 by Pioneer Credit Recovery ("Pioneer"), previously terminated as a defendant in this suit. [Doc. 1 at 8].

On March 13, 2012, the parties settled the F&D lawsuit. [Doc. 1 at 9]. After Mackie paid F&D in full, the preliminary injunction was lifted by agreed order on or about April 24, 2012. [Doc. 1 at 9]. That same day, Mackie wired $604,766.89, the balance quoted by the SBA back on October 6, 2010, to Treasury, and forwarded a letter contesting his obligation to pay any additional interest and fees. [Doc. 1 at 9]. Subsequently, Mackie received notice from Treasury in October 2012 that a $17,550.00 offset was received as a result of his overpayment on his 2011 income tax return. [Doc. 1 at 10–11]. Pioneer later advised that the SBA had denied Mackie's request to waive assessment of the additional fees and interest. [Doc. 1 at 11]. In December 2012, Mackie sent a dispute letter directly to Treasury and has not received a substantive response. [Doc. 1 at 11].

As a result, Mackie filed the instant suit on June 19, 2013, seeking a declaratory judgment that (1) he has no obligation to pay the additional fees or interest because he was prohibited from paying the SBA Loan by the TRO and preliminary injunction entered in the F&D lawsuit, and (2) that Treasury improperly utilized his 2011 income tax overpayment to offset the additional interest and fees and those funds should be returned to him. [Doc. 1 at 11–12]. The SBA filed the motion *sub judice* on November 4, 2013. [Doc. 14]. In the course of briefing, Mackie conceded that the proper venue for his claim regarding the garnished $17,550.00 income tax overpayment is the Court of Federal Claims, and he requests leave to dismiss without prejudice his claim as to those funds [Doc. 21 at 10], leaving only his request for declaratory judgment regarding his obligation to pay additional interest and fees on the SBA Loan before the Court.

### III.  DISCUSSION

**A.   Motion to Dismiss for Lack of Jurisdiction**

Federal courts are courts of limited jurisdiction and may only hear cases authorized by the Constitution, federal statute, or treaty. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Subject-matter jurisdiction "cannot be created by waiver or consent." *Id.* at 919. Thus, a federal court has an independent duty, at any time throughout the proceedings, to determine whether it properly has subject-matter jurisdiction to hear a case. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*."). Moreover, when a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, courts should consider the "jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

4

In considering a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is entitled to consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue. *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

*Declaratory versus Injunctive Relief*

The United States must consent to be sued and that consent is a prerequisite to federal jurisdiction. *Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*, 364 F.3d 269, 273 (5th Cir. 2004) (citing *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003)). Congress has waived sovereign immunity with regard to the SBA, subject to the limitation specified in 15 U.S.C. § 634(b)(1) that "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property."

Here, Mackie has sued for a judgment declaring that he does not owe additional interest or fees on the SBA Loan. In its motion to dismiss, the SBA argues that this action is, in essence, a suit for injunctive relief, which is precluded by 15 U.S.C. § 634. [Doc. 15 at 12–14]. However, the SBA fails to provide legal support for its premise. The SBA's reliance on the holding of *Expedient Servs. Inc. v. Weaver*, 614 F.2d 56 (5th Cir. 1980) [Doc. 15 at 14] is misplaced. In *Weaver*, the plaintiff initially sued to enjoin the SBA from making a programming decision which would have had the effect of disqualifying the plaintiff from bidding on a

5

particular cleaning contract.  614 F.2d at 57.  However, while the lawsuit was pending, and upon learning that the SBA's decision had already been made, the plaintiff orally attempted to change its prayer for injunctive relief to a request to set aside the SBA's decision.  614 F.2d at 58. Although, as the SBA notes, the Court of Appeals for the Fifth Circuit found that the plaintiff's labeling of the relief sought was not dispositive, the appellate court did not take the further step of holding that a request for declaratory relief against the SBA must be construed as a request for injunctive relief. Accordingly, this Court must analyze Mackie's complaint to make that determination.  See *Valley Constr. Co. v. Marsh*, 714 F.2d 26, 29 (5th Cir. 1983) (declaratory judgment available as a remedy against the SBA where the request for such is not "a shallow subterfuge for an unavailable injunction.").

Defendant argues that "Mackie seeks to constructively apply an injunction against the SBA from the F&D case and requests that this Court enjoin the SBA from continuing to collect on Mackie's debt."  However, viewing the complaint in the light most favorable to Mackie, Mackie does not seek to impose the injunction in the F&D lawsuit on the SBA, but only asserts that injunction's applicability to him was a legal impediment to his compliance with his contractual obligations to the SBA, thus, he should be excused for his failure to perform under the contract to the extent that he does not owe additional interest and fees.  [Doc. 1 at 11-12]. Mackie seeks only the relief that arguably would have been available to him if the alleged impediment to performance had been something other than an injunction.

Moreover, now that Mackie has abandoned his claim relating to the $17,550 Treasury Department offset, he no longer requests this Court to enjoin the SBA's collection efforts, but only to clarify his (Mackie's) obligation to the SBA with respect to the outstanding balance claimed in light of the impossibility of complying with his contractual obligations.  What he

6

seeks is the essence of a declaratory judgment. "The declaratory judgment cannot order . . . anything; it merely resolves questions regarding the rights of the parties." *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 324 (5th Cir. 2001) (applying the Uniform Declaratory Judgments Act, which is functionally similar to the federal Declaratory Judgment Act sued under here); *see also Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987) ("Injunctions and declaratory judgments are different remedies.").

Further, while the SBA argues that section 634(b)'s "other similar processes" language encompasses declaratory relief, it again fails to offer any legal support. Indeed, the law directs a finding that Congress implicitly excluded declaratory relief from the list of limitations by explicitly including other limitations. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (quoting *Andrus v. Glover Constr. Co*., 446 U.S. 608, 616–617 (1980).

Finally, the Court agrees with Mackie that following the SBA's line of reasoning would lead to the absurd result that any type of relief awarded against the SBA would be "injunctive" because it has the effect of prohibiting the agency from pursuing some course. [Doc. 21 at 9]. Such result would be counterintuitive to Congress' express waiver of sovereignty to permit legal action against the SBA when it allegedly exceeds its statutory authority. The purpose of section 634(b)'s injunction exception is to avoid potential interference with and obstruction of "agency operations through mechanisms such as the attachment of funds." *Ulstein Maritime*, 833 F.2d at 1057 (concluding that § 634(b)(1) does not provide blanket immunity from every type of injunction). Here, as in *Ulstein Maritime*, the grant of declaratory relief would not affect the SBA's "internal workings." *Id.* Rather, it would be a simple determination that a sum the SBA

claims is owed to it is not.

**B.      Motion to Dismiss for Failure to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). To overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

The SBA argues that Mackie fails to state a claim upon which relief can be granted because he "does not directly challenge the SBA's statutory and regulatory power to collect upon its debts," but instead challenges the Treasury Department's assessment of additional interest and fees based on his failure to timely pay. [Doc. 15 at 19]. The SBA avers that Mackie was "invited" by the Court's TRO and preliminary injunction issued in the F&D lawsuit to seek permission from the Court to make payments to SBA, and that he simply "did not accept the invitation." [Doc. 15 at 19–20]. The SBA further asserts that, in his complaint, Mackie did not directly challenge the SBA's statutory and regulatory power to collect upon its debts, which means that Mackie essentially asks the Court to excuse his guarantor obligations due to the impossibility of him paying while subject to the F&D injunction. [Doc. 15 at 19–20]. The SBA contends, however, that Mackie created the impossibility by not seeking leave of Court in the

F&D lawsuit to pay the SBA what he owed.  [Doc. 15 at 20].  The SBA emphasizes that Mackie was involved in crafting the language for the TRO and injunction which permitted him to pay some expenses and not others.  [Doc. 15 at 20].

Mackie responds that the SBA invites the Court to speculate that such a request would have been granted in the F&D lawsuit.  [Doc. 21 at 13–14].  Mackie further contends that whether he could have sought and actually received approval to pay the SBA is a fact question and exceeds the scope of a Rule 12(b)(6) inquiry.  [Doc. 21 at 14].

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Courts have broad discretion in determining whether to entertain an action for declaratory relief.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995).  In analyzing whether to dismiss a declaratory judgment suit, courts must determine: (1) whether the action is justiciable; (2) whether the court has authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action.  *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003).

Here, Mackie presents a justiciable claim: whether a legally-recognized impediment prevented his performance of contractual duties to the SBA, that is, whether he was without recourse, based on the entry of the TRO and subsequent preliminary injunction in the F&D lawsuit, to refuse to pay the principal and interest on the SBA Loan in time enough to avoid the imposition of additional interest and fees.  This Court has the authority to grant relief, that is, to make such determination.  And, because of the substantial rights of the parties at issue here, the Court should exercise its discretion to do so.

Although Mackie does not allege that the SBA exceeded its statutory authority, he is not required to — Mackie can preemptively seek declaratory judgment to determine if he was indeed in breach of his obligations on the SBA Loan such that he is obligated to pay additional penalties and fees. *See, e.g.*, *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1204 (5th Cir. 1993) (affirming the district court's resolution of a preemptive declaratory action on the merits); *Allstate Ins. Co. v. Perkins*, No. 07-CV-0155, 2008 WL 4283648 at *1–2 (N.D. Miss. 2008) (same), *vacated in part on other grounds by* 327 F. App'x 518 (5th Cir. 2009); *J.B. Haralson v. E.F. Hutton Grp.*, No. 86-CV-2761, 1987 WL 5669 at *1 (S.D. Tex. 1987) (denying a motion to dismiss a preemptive declaratory action); *see also Mass. Bay Transp. Auth. v. United States*, 254 F.3d 1367, 1372 – 75 (Fed. Cir. 2001) (adjudicating a contract dispute on the basis of impossibility).

Moreover, as before, the SBA has presented a bare argument without any legal support. It conclusively states:

> Because Mackie did not accept the court's invitation in the F&D case to obtain permission from the court to make a payment, he cannot state a plausible claim that it was impossible for him to pay the SBA debt. Therefore, the Court should dismiss Mackie's Complaint for failure to state a claim under Federal Rule of Civil 12(b)(6).

[Doc. 21 at 17]. The SBA fails to explain why Mackie's pleading is legally infirm and instead invites the Court to now determine the facts at the heart of Mackie's claim. At this juncture, however, the Court must interpret the facts in the light most favorable to Mackie's claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). Consequently, the SBA has not demonstrated that Mackie has failed to state a factually-supported claim.

10

## IV.  RECOMMENDATION

For the foregoing reasons, it is recommended that Defendant Karen G. Mills' *Motion to Dismiss Mackie's Complaint for Lack of Jurisdiction, or, Alternatively, for Failure to State a Claim* [Doc. 14] be **DENIED**.  Furthermore, Mackie's request for leave to dismiss without prejudice his claim reagarding the $17,550.00 income tax overpayment intercepted by Treasury should be **GRANTED**.

**SIGNED** June 2, 2014.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL / OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  See *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE