IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NICK MACKIE, § | |
|     Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:13-CV-2328-N-BK |
| § | |
| KAREN G. MILLS, Administrator of the § | |
| Small Business Administration, et al., § | |
|     Defendants. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Judge's *Order of Reference*, Doc. 44, this case was referred to the undersigned for pretrial management. The Court has considered *Defendant Small Business Administration's Motion for Summary Judgment*, Doc. 49. For the reasons that follow, it is recommended that the motion be **GRANTED**.

### I. BACKGROUND

This action stems from efforts by the Small Business Administration ("SBA") and Diversified Collection Services, Inc.,[1] to collect on a defaulted SBA loan. On September 28, 2007, Plaintiff Nick Mackie executed an agreement to be a personal guarantor of an SBA loan to Lonestrella LLC for $650,000 (the "SBA Loan"). Doc. 52 at 7-17 (Note & Unconditional Guarantee). Mackie alleges Lonestrella used the SBA Loan to purchase real property, which it leased as office space to Murillo Modular Group Ltd. ("MMG"). Doc. 1 at 4-5. Salvador Murillo, MMG, and NM & SM Development Ltd. also signed as unconditional guarantors of the SBA Loan. Doc. 52 at 4 (Wilson Decl. at 2). Lonestrella's last payment on the SBA Loan was in March 2010, after which, it defaulted. Doc. 52 at 4 (Wilson Decl. at 2). An agent of the SBA

---

[1] Defendant Diversified Collection Services, Inc., was not served with process and has never appeared.

made an unsuccessful demand for the past-due balance on July 14, 2010. Doc. 52 at 4 (Wilson Decl. at 2). Then, on October 6, 2010, the SBA notified Mackie of its intent to accelerate the note, and demanded full payment of the outstanding principal of $604,766.89. Doc. 52 at 4 (Wilson Decl. at 2).

Meanwhile, the Fidelity & Deposit Company of Maryland ("F&D") filed suit against MMG, Lonestrella, Mackie and others in this Court, alleging breach of a construction contract and indemnity agreement. *See Fidelity & Deposit Co. of Md. v. Murillo Modular Group, Ltd.*, No. 3:11-CV-0382, Dkt. 2 at 2 (N.D. Tex. Feb. 25, 2011) (Lynn, J.) ("F&D Lawsuit"). On March 4, 2011, F&D was granted a temporary restraining order ("TRO") enjoining the defendants, including Mackie, from spending or otherwise using specified funds. Doc. 54, *passim*. Specifically, they were permitted to "make such payments as are ordinary, typical and necessary for their regular living expenses or the servicing of any of their secured debts," but not allowed to "undertake any new such expenses or debts without further leave of court." Doc. 54 at 6 (TRO). The language permitting Mackie to pay regular living expenses was included after Mackie objected that the proposed TRO was "overly broad" because it did not permit the defendants to pay their normal living expenses. Doc. 52 at 23-24 (Mackie's Resp. to App. for TRO). Mackie noted in his response to the TRO application that "F&D [had] agreed to include a clause or provision" addressing this concern, and cited the exact language ultimately included in the TRO. Doc. 52 at 24 (Mackie's Resp. to App. for TRO). The TRO was converted into a preliminary injunction on March 23, 2011, and included the same provision as the TRO permitting the payment of certain expenses. Doc. 54 at 15-22 (Prelim. Injunction).

On March 21, 2011, the SBA again notified Mackie of the outstanding balance of the SBA Loan, which by then had already grown to $639,303.66, inclusive of interest. Doc. 52 at 4

(Wilson Decl. at 2); Doc. 52 at 19-20 (SBA Letter of Mar. 21, 2011).  The written notice also stated that the debt, if still unpaid, would be referred to the Department of the Treasury ("Treasury") within 60 days of the notice, and that "Treasury may add interest and also substantial collection fees (up to 30% or more) to [the] unpaid debt as provided by law."  Doc. 52 at 20 (SBA Letter of Mar. 21, 2011) (emphasis in original).  Mackie's counsel responded to the SBA via email, advising of the preliminary injunction in the F&D Lawsuit "freezing" Mackie's assets and requesting that the SBA suspend its collection efforts, including the referral of the loan to Treasury, until after arbitration in the F&D Lawsuit was completed and the injunction was lifted.  Doc. 52 at 21-22 (Email of Apr. 18, 2011).  According to Mackie, discussions between the SBA, Treasury, debt collectors, and Mackie continued throughout 2011.  Doc. 1 at 8.

      In March 2012, the parties settled the F&D Lawsuit.  No. 3:11-CV-0382, Dkt. 175 (Mar. 26, 2012).  On April 24, 2012, MMG wired $604,766.89, the amount the SBA had indicated was owed on October 6, 2010, to Treasury; Mackie alleges he also forwarded a letter contesting his obligation to pay any additional interest and fees.  Doc. 1 at 9; Doc. 52 at 4 (Wilson Decl. at 2).  The preliminary injunction was lifted by agreed order on April 30, 2012.  No. 3:11-CV-0382, Dkt. 180.  Due to offsets made against other debtors to the SBA Loan, the current balance due as of May 27, 2015, is $97,350.42.  Doc. 52 at 4. (Wilson Decl. at 2).

      Mackie filed the instant suit on June 19, 2013, seeking a declaratory judgment that he has no obligation to pay the additional fees or interest because he was prohibited from paying the SBA Loan by the TRO and preliminary injunction entered in the F&D Lawsuit.  Doc. 1 at 11-12.

3

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id.  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  See Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994).

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. Id.  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. Ragas, 136 F.3d at 458.  A court may take judicial notice of documents filed in other cases to establish the fact of such litigation and related filings. Taylor v. Charter Medical Corp., 162 F.3d 827, 830 (5th Cir. 1998).

### III.  DISCUSSION

The SBA construes Mackie's declaratory judgment claim to rely on an impossibility or impracticability claim/defense which, it argues, fails because Mackie had a hand in defining the parameters of the injunction.  [Doc. 51 at 14](). The SBA notes that the F&D injunction did not breach or nullify the SBA Loan or Mackie's agreement to be a guarantor.  [Doc. 51 at 14](). The SBA contends that it is disingenuous of Mackie to claim now that the injunction's language prevented him from making SBA or Treasury payments because he played a role in drafting the injunction's language and could have requested an exception permitting him to meet his obligation to the SBA.  [Doc. 51 at 14](). Specifically, the SBA posits that it was as a result of Mackie's objection to the proposed injunction's overly broad freeze of his personal accounts that F&D and Mackie agreed to revise the language to permit payment of certain expenses.  [Doc. 51 at 14](). The SBA argues that, while Mackie took steps to ensure his ability to pay some expenses, he made no request to F&D or the Court that he also be permitted to satisfy his ongoing obligation as a guarantor on the SBA Loan.  [Doc. 51 at 16](). Finally, the SBA argues that Mackie "had an open invitation to return to the Court to request permission to satisfy his agreement with the SBA," but he never attempted to rectify the barrier to paying the SBA.  [Doc. 51 at 18](). The SBA concludes that, if Mackie believed the F&D injunction barred payment of his outstanding government debt, he was in the best position to bring that fact to the attention of Judge Lynn, the presiding judge.  [Doc. 51 at 18-19]().

Mackie does not directly answer the motion for summary judgment or offer controverting evidence.  Instead, in his three-page response, he argues that the SBA's proof is insufficient.  [Doc. 53 at 1-2](). Mackie contends that SBA counsel's questions during his deposition implied that he should have interrupted a hearing and asked Judge Lynn whether the Court would carve

out an SBA exception to the F&D injunction. Doc. 53 at 2. Regardless, Mackie maintains that there is no evidence or reason to believe that the Court would have made such an accommodation in the injunction. Doc. 53 at 2. He also suggests that his was not a question of resources, and that but for the injunction, he could have paid the full amount owed on the SBA Loan. Doc. 53 at 2-3.

The SBA replies that Mackie misunderstands the legal standard, and contends it met its summary judgment threshold by providing evidence that Mackie failed to employ reasonable efforts, or any effort for that matter, to include language in the F&D injunction to permit payments on the SBA Loan. Doc. 56 at 2. The SBA avers that the issue is not whether Mackie would have been successful in obtaining permission from the F&D Court, but whether he made reasonable efforts to overcome the impossibility he now claims resulted from the injunction in that case. Doc. 56 at 4. Because Mackie does not offer any evidence on this issue, the SBA concludes that there is no genuine issue of material fact and that it is entitled to summary judgment. Doc. 56 at 4.

Generally speaking, the impossibility or impracticability doctrine excuses a party from performance under a contract if, without that party's fault, an event occurs, the non-occurrence of which was a basic assumption when the contract was made. RESTATEMENT (SECOND) OF CONTRACTS § 261. To assert this defense, Mackie must show he had no reason to know at the time the contract was made of the facts on which he relies. *Nat'l Iranian Oil Co. v. Ashland Oil Inc.*, 817 F.2d 326, 333 (5th Cir. 1987). Even then, a party may not rely on the doctrine of impossibility or impracticability "if the event is due to the fault of the party himself." *Id.* (internal alterations omitted). Simply put, a party may not affirmatively cause, *Id.*, or *fail to prevent* the event, *Nissho-Iwai Co. v. Occidental Crude Sales Inc.*, 729 F.2d 1530, 1540 (5th Cir.

1984), that impedes the performance.  *See also Organizacion JD Ltda. v. Dep't of Justice*, 18 F.3d 91, 95 (2d Cir. 1994) (impossibility doctrine extends to "judicial action as long as the party seeking to be excused has not caused or *failed to prevent* the judicial action." (quoting *RSB Mfg. Corp. v. Bank of Baroda*, 15 B.R. 650, 654 (S.D.N.Y. 1981) (emphasis added))).  Further, a party "must use reasonable efforts to surmount the obstacle to performance." *Sherwin Alumina L.P. v. AluChem Inc*., 512 F. Supp. 2d 957, 973 (S.D. Tex. 2007).

Upon consideration of the applicable law and the evidence, the Court finds that there is no genuine issue as to any material fact and, thus, the SBA is entitled to summary judgment in its favor.  This suit boils down to one issue, whether Mackie is entitled to rely on the legal justification of impossibility to excuse his default under the terms of the SBA Loan.  The evidence proffered by the SBA establishes that Mackie failed to prevent the F&D injunction's bar on SBA Loan payments and failed to employ reasonable efforts to overcome that bar, and Mackie has failed to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

It is clear from Mackie's response to the TRO application that he pursued and reached an agreement with F&D to preserve his ability to meet his "normal living expenses," despite the restrictions of the TRO.  Doc. 52 at 24.  Subsequently, the agreed proposed TRO language included in Mackie's response to the TRO application was adopted verbatim by the Court.  Doc. 54 at 6.  While, it is clear from the evidence that Mackie participated in drafting the terms of the injunction, there is no evidence that he ever attempted to also have his obligation to the SBA exempted from the prohibition on disposing of assets under the TRO.  Thus, the only evidence presented establishes that he failed to prevent the event that he now insists impeded his performance under the terms of the SBA Loan.  *Ashland Oil*, 817 F.2d at 333; *Organizacion JD*,

7

18 F.3d at 95. It is of no moment that Judge Lynn might not have agreed to an exception to accommodate Mackie's obligation under the SBA Loan, as the onus was on Mackie to make "reasonable efforts" to avoid an impossibility-precipitating event. *Sherwin Alumina*, 512 F. Supp. 2d at 973.

Moreover, the TRO and preliminary injunction plainly left open the option of Mackie requesting leave of court, at any point, to pay down the SBA Loan. *See* Doc. 54 at 6 (TRO permitting payment of normal living expenses but prohibiting the incurrence of new expenses or debts "without further leave of court"); Doc. 54 at 20 (same provision under the preliminary injunction). Mackie has offered no evidence to suggest that he ever sought leave of court in order to avoid interest and penalties on the SBA Loan. Rather, Mackie supposes that there was no opportunity for him to seek leave of court because it would have been highly unorthodox for him to interrupt the testimony he gave in Court prior to the ruling to ask Judge Lynn questions about the SBA Loan. Doc. 53 at 2 (citing Doc. 54 at 25 (Mackie Dep. 18:2-20). In light of the fact that Mackie ensured that he would have the ability to meet his normal living expenses under the terms of the injunction, his suggestion that he could not have at least *attempted* to seek a similar accommodation for his SBA Loan obligation is unsupported. Ostensibly, Mackie, who represents that at all times he had the money to pay off the SBA Loan, Doc. 54 at 27 (Mackie Decl. ¶ 1), could have moved for leave to do so at any time throughout the pendency of the F&D Lawsuit. Because there is a dearth of evidence that he sought, at any point, to affect the injunction's terms in a way that would accommodate his SBA Loan obligation, his claim of impossibility or impracticability fails. Accordingly, the SBA is entitled to summary judgment in its favor.

### IV.  CONCLUSION

For the foregoing reasons, it is recommended that *Defendant Small Business Administration's Motion for Summary Judgment*, Doc. 49, be **GRANTED**, and this case **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on August 11, 2015.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL / OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE